The bill in this case contained a prayer for a decree to establish the fact that a deed made by Emma C. Sippel, dated June 26th, 1918, to the defendants, recorded in book E 60 of deeds for Essex county, page 402, was without consideration, and that the said Emma C. Sippel died seized of the lands described in the above-mentioned deed, or of so much thereof as remained after a conveyance of a portion of said lands to the Newark Athletic Club, and that she was the owner of a mortgage which had been given back as part of the consideration of the last-mentioned conveyance.
The bill charged the defendants with fraud, and further charged that the consideration of the deed above mentioned was merely colorable and was inadequate.
The evidence proved that Emma C. Sippel, mother of the complainant and the defendant, who are sisters, had died on *Page 444 
June 7th, 1923, and that under her will her property had been left to the complainant and the defendant in equal shares. That on or about June 26th, 1918, the said Emma C. Sippel had been indebted to the Caldwell National Bank on a note or notes in a sum of approximately $2,000, and the bank refused to renew said note or notes, and the president of said bank had informed the defendant Mrs. Force that the bank would not loan any more money to her mother, Mrs. Sippel, because they did not think she was capable of doing business, and suggested to her that if she would get a deed from the mother for the land described in the bill of complaint, the president of the bank would loan on a first mortgage on said property the sum of $1,500, and that all or a portion of this mortgage money would be used to pay off the mother's indebtedness to the bank.
At the time this mortgage was given the defendant Mrs. Force told the president of the bank that she had not bought the property and paid for it, but that she had obtained the deed to raise money to pay off her mother's indebtedness.
The proofs further showed that, subsequent to the giving of this mortgage, the mother of complainant and the defendant Mrs. Force had lived with the defendant, and that the conduct and management of the home and farm had continued as it had previous thereto; that all moneys derived from the sale of farm products, the interest on other mortgages, rents from other properties, were deposited in banks and checked out for the purpose of paying taxes and other carrying charges, and also for the purpose of paying off other debts of the mother, Mrs. Sippel.
That, subsequent thereto, the said mother had sold another piece of property in Montclair, and the proceeds of the sale of this property had, in the same manner, been placed in the bank and used for the purpose of paying off debts and carrying charges on the property described in the bill of complaint and other property.
That prior to the death of the mother, Mrs. Sippel, a portion of the property described in the deed given by the mother to the daughter, Mrs. Force, had been sold to the Newark *Page 445 
Athletic Club, and that the proceeds of this sale had likewise been deposited in the bank and used, as had all the other moneys, which were derived either from the sale of the property or from the conduct of the farms.
Complainant testified that, immediately subsequent to her mother's death, she had a conversation with her sister, Mrs. Force, as a result of which she learned for the first time that her mother had conveyed the property described in the bill of complaint to her sister, who told her that the conveyance had been made for the purpose of securing to Mrs. Force and to her husband the sum of $800, which was due him for wages, but that, subsequently, when the schedules for the collateral inheritance tax due the State of New Jersey from her mother's estate was made up, the land in question was omitted, and that, when she questioned her sister about it, her sister refused to give her any information, and insisted that she was the owner of the land.
It further appeared that none of the mother's debts had been paid from any money, except the money which had been raised either by way of mortgage or sale of the mother's property, or from the proceeds derived from the management of her farms, and that at the time of her death there were still debts due which were paid from the personal estate of the mother; that a portion of the property originally conveyed to the daughter, Mrs. Force, had been sold for $12,250, $3,250 dollars of which had been paid in cash and the balance of $9,000 dollars by the execution of a purchase-money mortgage, and that there was still left of the original property about sixteen acres, worth, approximately, $250 an acre.
The answer, which was filed by the defendants, set up two different explanations of the conveyance in question, to wit:
"1. The property was deeded to the defendant and they were to pay all their mother's notes which were then outstanding, and, if there was any surplus, it was to be theirs.
"It was also agreed at the time that in consideration of the defendant's mother making the deed as aforesaid, the defendant and her husband agreed to take care of her mother during the remainder of her lifetime, which agreement they performed. *Page 446 
"2. That the complainant and her mother, Mrs. Emma C. Sippel, had not been for a period of years prior thereto very friendly, said unfriendliness growing out of transactions whereby complainant's mother, Emma C. Sippel, had endorsed promissory notes of one Leonard at the instance of complainant, the said Emma C. Sippel, mother of complainant, and the defendant, Agnes G. Force, had been compelled to pay said notes."
No attempt was made at this final hearing to prove the latter allegation.
With reference to the first reason set forth in defendants' answer, the evidence clearly indicated that the notes or debts of the parties' mother, which had been paid prior to her death, were paid with her own money, and that any of her debts, which were due at the time of her death, were paid from the personal estate by her executors.
It was also proved that, instead of the defendant and her husband taking care of the parties' mother during the remainder of her lifetime, the mother had practically supported them, and that for any service they performed for her she had paid them wages.
All of the accompanying incidents of the transaction in question, especially the pecuniary necessities of the mother, combined with inadequacy of consideration, in fact, an almost total failure of consideration, operate to throw the heavy burden of proof upon the defendants, who are seeking to enforce the transaction in question and claiming the benefits of it, to show that the mother acted voluntarily, knowingly, intentionally and deliberately, with full knowledge of the nature and effects of her acts, and that her consent was not obtained by any oppression, undue influence, or that undue advantage was taken of her condition, situation or necessities.
I do not believe that the defendants in this case have succeeded in showing the good faith of the transaction, and I think that this court should grant the relief asked for by complainant. *Page 447